Okey, J.
Whatever uncertainty there was in the law of England as to the proof of handwriting by comparison, was removed by the statute 17 and 18 Vict. c. 125, c. 27; 28 Vict. c. 18, s. 8. The only question there is as to the proper construction ■ of those statutes. They provide, in substance, that comparison of a disputed handwriting with any writing proved to the satisfaction of the judge to' be genuine, is permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted ■to any court and jury as evidence of the genuineness or otherwise of the writing in dispute. In this state, independently of statute, it has been settled that standards of comparison may be used by experts called as witnesses upon the trial of an issue as to the genuineness of a' signature, yet the standard of comparison, when not already a paper in the case, or admitted to be genuine, must be clearly proved by persons who testify directly to its having been written by the party. Bragg v. Colwell, 19 Ohio St. 407; Pavey v. Pavey, 30 Ohio St. 600. Evidence of this character is 1’eceived with caution, and there is a very general disposition in the courts to regard such testimony, as a general rule, of a weak and unsatisfactory character. Still the admissibility of such evidence is for the court, its weight for the jury. Nevertheless, to render it admissible it is quite clear that all the facts upon which the expert forms his opinion should be before the court and jury, to the end that they should determine, as far as they may be able to do so, whether the opinion .given is well founded, and so that the opposing counsel may have an opportunity to cross-examine as to such facts. Here, after the witness Brown had been inquired of, whether the signature to a certain note and the writing in the check alleged to have been forged were in the same handwriting, and he had answered, “ I should think they probably were,” and had added, in answer to the same question, *200 “My remembrance of the check and my examination of certain, other papers brought to me by Mr. Wolf since the check was presented makes me think so.” The court excluded the latter part of the answer, which was the predicate of his opinion, but refused to exclude the first portion of-the answer, in which he states his conclusion. We are all of opinion that in so holding, the court below erred. The court and jury were, as I have said, entitled to consider the grounds of the opinion, and the defendant’s counsel clearly had a right to cross-examine the witness as to such ground of belief.
In so holding, however, we do not hold the witness was precluded from giving an opinion, on the ground that the check was not produced at the trial. Where the counsel for the state have endeavored to obtain the alleged forged instrument, and failed, its absence can have no other effect on the trial than to render a conviction more difficult.
The court also erred in admitting the testimony of Stewart. That witness testified that he was an expert in the examination of handwriting and had examined the alleged forged check when -it was presented at the bank ; that he did not recognize the handwriting, but was sure that the signature to it was not that of John B. Brown ; that he had never seen the defendant write, nor had he seen the signature of C. S. Koons until now, nor had he seen the alleged forged check since March 31. The note to Patterson & Curfman, mentioned in the statement of the case, was then shown to the witness, and he was permitted to state that the forged check and the signature to the note “ were probably in the same handwriting.” Row, in the opinion of a majority of the court, the witness had not qualified himself to express the opinion so given. It must appear, before such opinion is called for, that the witness has formed, or is then able to form, an opinion upon the matter in question. No such qualification appears anywhere in this record, and in the absence of it we hold that the opinion given was improperly received.
In view of the fact that the judgment must be reversed, and the cause remanded for a new trial, fo^ the reasons stated, it is unnecessary to determine whether the act of the sheriff *201 and Ms deputy, who had testified .in the cause on behalf of the state, in remaining in the room where the jury were deliberating, affords of itself ground of reversal. But we all unite in condemning such acts. The jury should be left free to con-eider the case and find their verdict unrestrained by the presence of any person, and especially the presence of those who testified as witnesses in the catase, and upon -whose testimony the jury might desire to comment.

Judgment reversed,.